IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MARIE ELIZABETH BLAIS,**

    **Plaintiff,**

    v.

    Civil Action 2:15-cv-3038
    Judge George C. Smith
    Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Marie Elizabeth Blais, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 15), and the administrative record (ECF No. 9). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I. BACKGROUND

Plaintiff protectively filed her application for benefits in February 2012, alleging that she has been disabled since October 6, 2007 due to fibromyalgia, chronic fatigue, depression, and trigyminal. (R. at 182-87, 205.) Plaintiff's application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. Administrative Law Judge Ryan Glaze ("ALJ") held a hearing on April 22, 2014, at which Plaintiff, represented by counsel, appeared and testified. (R. at 90–101.) Jerry A. Olsheski, Ph.D., a vocational expert, also appeared and testified at the hearing. (R. at 101-06.) On June 1, 2014, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 58-77.) On September 24, 2015, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–7.) Plaintiff then timely commenced the instant action.

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

Plaintiff testified at the administrative hearing that she is a college graduate with a degree in hospitality and restaurant management. (R. at 90.) She indicated that resides with her mother, in her mother's home. (*Id.*) Plaintiff testified that she assisted her mother with caring for her dogs and light household chores, such as doing small loads of laundry and preparing meals. (R. at 91.) She drives but she does not own a vehicle. (R. at 92.)

Plaintiff testified that she last worked in 2007 doing part-time telephone work for a media company. (R. at 92.) She indicated that she last held a full-time job in 1999. Prior to that period of time, Plaintiff was married and was a stay-at-home mother. (R. at 92-93.) Plaintiff represented that she left her job after being diagnosed with trigeminal neuralgia and fibromyalgia

because of the pain these conditions caused her. (R. at 93.) Plaintiff testified that she also suffers from depression. Her symptoms include suicidal thinking without intent, daily crying spells, and decreased energy. (R. at 94-95.) Plaintiff stated that her trigeminal neuralgia pain is triggered by numerous things, including brushing her teeth, gargling, blow drying her hair, walking outside in the wind, and sunlight. (R. at 95-96.)

Plaintiff testified that she experiences extreme trigeminal neuralgia pain on a daily basis. (R. at 96.) She explained that when she engages in increased physical activity, such as assisting her mother around the house, she experiences an exacerbation of her symptoms. This exacerbation causes her to not be able to function twice a week. (*Id.*)

When questioned why she was wearing a brace on her right wrist, Plaintiff replied she has tendinitis from overuse. (R. at 97.) She was unable to use her right hand for writing, holding a utensil, and pinching due to pain that extended from her right thumb to her wrist. (*Id.*) She identified her most comfortable position as sitting with her legs elevated. (*Id.*) She estimated that she spent 80 percent of her day in this position. (R. at 98.) Plaintiff testified that she exercises three times per day for five to ten minutes each, consisting of light stretching, band exercises, and light weights. (*Id.*)

Her medication includes Gabapentin, with side effects of fatigue and drowsiness; and Lithium, with side effects of a dry mouth, constipation, and hand tremors. (R. at 99.) She is treated by her psychiatrist once per month and is treated by her mental health therapist once per week. (R. at 100.)

  B.  **Vocational Expert Testimony**

Jerry A. Olsheski testified as the vocational expert ("VE") at the administrative hearing. (R. at 101-06.) The ALJ proposed a series of hypotheticals regarding Plaintiff's residual

functional capacity ("RFC") to the VE.  (R. at 56-58.)  Based on Plaintiff's age, education, and work experience and the RFC ultimately determined by the ALJ, the VE testified that Plaintiff could perform light, unskilled jobs in the national economy, such as a hand packer with 275,000 nationally, mail clerk with 126,000 nationally or cleaner with 700,000 nationally.  If the exertional level is reduced to sedentary, the Plaintiff could perform unskilled jobs in the national economy, such as an assembler with 500,000 nationally, production inspector with 75,000 nationally, or hand packager with 75,000 nationally.  (R. at 56-57.)

The VE further testified that competitive work would be eliminated if the hypothetical individual diverted her attention and focus away from instruction, production and safety for more than 10% of the workday.  (R. at 58.)

### III.  MEDICAL RECORDS

The sole issue in this case involves the opinions provided by the state agency psychologists.  In May 2012, after review of Plaintiff's medical record, Vicki Warren, Ph.D., a state agency psychologist, assessed Plaintiff's mental condition.  (R. at 109-18.)  Dr. Warren opined that Plaintiff was mildly restricted in her activities of daily living; mildly limited in maintaining social functioning; and moderately limited in maintaining concentration, persistence, or pace; with no episodes of decompensation of an extended duration.  (R. at 114.)  She further determined that the evidence did not establish the presence of the "C" criteria.  (*Id.*)  Dr. Warren found Plaintiff would be moderately limited in her ability to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable

4

number and length of rest periods; and to respond appropriately to changes in the work setting. (R. at 118-19.) Dr. Warren concluded that Plaintiff demonstrates overall moderate limitations due to concentration, persistence, and pace. (R. at 118.) In February 2013, state agency psychologist Karla Voyten, Ph.D., reviewed the file upon reconsideration and affirmed Dr. Warren's assessment. (R. at 122-37.) Both doctors opined that Plaintiff had mild limitations in activities of daily living, mild limitations in social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (R. at 114, 133.) The doctors also indicated that Plaintiff retained the ability to perform simple, routine tasks and maintained good memory and cognitive skills. (R. at 117-18, 136-37).

## IV. ADMINISTRATIVE DECISION

On June 18, 2014, the ALJ issued his decision. (R. at 58-77.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);

gainful activity since February 21, 2012, the application date. (R. at 60.) The ALJ found that Plaintiff had the following severe impairments: fibromyalgia, trigeminal neuralgia, obesity, and a depressive disorder, not otherwise specified. (*Id.*) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 62.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except that she can frequently stoop, kneel, crouch, and crawl and occasionally climb ladders, ropes, and scaffolding. The claimant retains the capacity to understand, remember, and carry out simple instructions. She can make judgments on simple work tasks and respond appropriately to usual work situations and changes in a routine work setting. She can respond appropriately to superficial interaction with supervisors, coworkers, and the public on trivial matters (e.g., dispensation and sharing of factual information that is not likely to generate an adversarial setting).

(R. at 65-66.) The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms are not entirely credible. (R. at 67.) The ALJ determined that Plaintiff experiences a moderate restriction in her ability to maintain concentration, persistence and pace, specifically noting that Plaintiff's pace for task completion was somewhat slow during her consultative psychological evaluation with Dr. Swearingen. (R. at 64.) The ALJ assigned "partial weight" to the State agency psychological opinions of Drs. Warren and Voyten, explaining that the objective evidence of record documents a moderate limitation of social functioning, that is more limiting than opined by State agency reviewers. (R. at 73.)

---

*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform jobs that exist in significant numbers in the national economy.  (R. at 75-77.)  He therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 77.)

## V.     STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and

where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.  ANALYSIS

In her Statement of Errors, Plaintiff asserts that the ALJ did not adequately explain the weight he gave to the opinions of the state agency reviewing psychologists. (ECF No. 12 at Pgs. 4-8). Relying on *Ealy v. Commissioner of Social Security*, 594 F.3d 504 (6th Cir. 2010), Plaintiff contends that the ALJ failed to incorporate all of her mental health limitations, specifically her ability to maintain concentration, persistence and pace, into the RFC. For the reasons that follow, the Undersigned disagrees.

The ALJ gave only "partial" weight to the opinions of the state agency reviewing psychologists, Vicki Warren, Ph.D., and Karla Voyten, Ph.D. Both doctors opined that Plaintiff had mild limitations in activities of daily living, mild limitations in social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. (R. at 114, 133.) The doctors also opined that Plaintiff retained the ability to perform simple, routine tasks and maintained good memory and cognitive skills. (R. at 117-18, 136-37). The ALJ gave these opinions only "partial" weight because the ALJ found the evidence supported additional limitations in social functioning. (R. at 73.) The ALJ, therefore, concluded that Plaintiff had greater limitations than those found by Drs. Warren and Voyten in social functioning.

Plaintiff argues that the ALJ ignored the findings of Drs. Warren and Voyten with regard to their opinions that Plaintiff was moderately limited in concentration, persistence and pace and failed to include this limitation in his RFC finding. A review of the ALJ's decision reveals,

however, that the ALJ did not ignore Plaintiff's difficulties with concentration, persistence, or pace.  In fact, as Plaintiff points out, the ALJ specifically considered her concentration and pace limitations in evaluating the Paragraph B criteria in his earlier analysis.  Here, the ALJ reviewed all of the evidence, including the state agency reviewing psychologists' opinions, and reasonably concluded that Plaintiff retained "the capacity to understand, remember, and carry out simple instructions . . . make judgments on simple work tasks and respond appropriately to usual work situations and changes in a routine work setting." (R. at 66.)   This conclusion is supported by substantial evidence.

Dr. Warren and Dr. Voyten opined that Plaintiff had moderate limitations in certain areas, such as her ability to maintain attention and concentration for extended periods.  Nevertheless, their ultimate conclusion was that, despite these moderate limitations, Plaintiff retained the ability to perform simple, routine tasks.  The ALJ adopted these limitations into his RFC finding.

Plaintiff surmises that the ALJ limited her to simple, routine tasks solely because the state agency physicians found that she had moderate limitations in maintaining concentration, persistence, or pace.  This conclusion, however, is based on speculation.  The ALJ considered the fact that the state agency psychologists' concluded that Plaintiff had moderate limitations in concentration, persistence, or pace, but also looked to Plaintiff's activities of daily living, consultative exams, and treatment notes from counseling sessions to form his RFC determination.

Plaintiff relies on *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010), to argue that the ALJ's RFC failed to account for the moderate limitations in concentration, persistence, or pace.  Plaintiff contends that *Ealy* stands for the proposition that limiting a claimant to simple,

9

repetitive tasks and instructions does not properly account for a claimant's moderate limitations in concentration, persistence, or pace.  The Undersigned finds this contention of error to be without merit.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of RFC is an issue reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e).

Here, the Undersigned finds that substantial evidence demonstrates that the ALJ's RFC adequately accounted for all of the limitations he found credible.  *Ealy*, the case upon which Plaintiff relies, is distinguishable.  On this point, *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426 (6th Cir. 2014), is instructive.  The *Smith-Johnson* Court analyzed the argument Plaintiff advances here:

> Smith–Johnson's first challenge concerns her concentration, persistence, or pace.  She relies on *Ealy*, 594 F.3d 504, to support her argument that more specific limitations should have been included in the hypothetical to the VE.  Yet, *Ealy* is distinguishable from this case.  In *Ealy*, the claimant's doctor limited him to "simple, repetitive tasks [for] [two-hour] segments over an eight-hour day where speed was not critical."  *Ealy*, 594 F.3d at 516.  In that RFC assessment, however, the ALJ included only a limitation to "simple repetitive tasks and instructions in nonpublic work settings."  *Id*.  That RFC finding was included in the hypothetical to the VE.  *Id*. This court held that the RFC assessment and the hypothetical did not adequately reflect the claimant's limitations because it truncated the doctor's specific restrictions.  *Id*.
>
> Here, the limitation to simple, routine, and repetitive tasks adequately conveys Smith–Johnson's moderately-limited ability "to maintain attention and concentration for extended periods."  Unlike in *Ealy*, Dr. Kriauciunas did not place any concrete functional limitations on her abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks.  Instead, Dr. Kriauciunas plainly determined that Smith–Johnson could perform simple tasks on a "sustained basis," even considering her moderate limitations in

> maintaining concentration and persistence for "extended periods." In other words, the limitation to simple tasks portrays the tasks that she can perform without being affected by her moderate limitations. The ALJ thus did not fail to include a restriction on her ability to maintain concentration, persistence, or pace while performing simple tasks, and he further reduced the required attention and concentration by restricting her to routine and repetitive tasks.

579 F. App'x at 436–37. Here, Drs. Warren and Voyten, like Dr. Kriauciumas in *Smith-Johnson*, did not place functional limitations on Plaintiff's ability to maintain pace when performing simple, repetitive, or routine tasks. Given that the ALJ did not find that Plaintiff had non-exertional limitations greater than those set forth by Drs. Warren and Voyten, and Plaintiff has pointed to no evidence in the record supporting more restrictive limitations, *Ealy* does not undermine the Undersigned's conclusion that substantial evidence supports the ALJ's RFC determination. Accordingly, Plaintiff's sole contention of error lacks merit.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy.

11

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:   February 6, 2017                                 /s/ *Elizabeth A. Preston Deavers*
                                                         Elizabeth A. Preston Deavers
                                                         United States Magistrate Judge